In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 24-3325

MAUREEN FOX and LYNNE WOODARD,

*Plaintiffs-Appellants*,

*v.*

DUPAGE TOWNSHIP, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cv-06720 — **Virginia M. Kendall**, *Chief Judge*.

_____

ARGUED FEBRUARY 17, 2026 — DECIDED JULY 31, 2026

_____

Before BRENNAN, *Chief Judge*, and RIPPLE and TAIBLESON, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Maureen Fox and Lynne Woodard worked for the DuPage Township's Levy Center for seniors for many years. In 2021, Gary Marschke and his ticket won the Township's elections. Marschke is a Democrat; Ms. Fox and Ms. Woodard are Republicans. At the first meeting of the new board, Marschke and the trustees voted to reorganize the Levy Center's leadership. Ms. Fox's and Ms. Woodard's

positions were abolished, resulting in the termination of their employment. They both now contend that their terminations were in retaliation for their campaigning on behalf of Marschke's opponent in the election. The district court granted summary judgment in favor of the defendants; Ms. Fox and Ms. Woodard appealed. After examination of the record and the relevant authorities, we conclude that the district court correctly granted the motion. We therefore affirm the judgment of the district court.

## I

## BACKGROUND

Ms. Fox and Ms. Woodard worked for DuPage Township for many years under Republican leadership. Ms. Fox was first hired as the Township Administrator in July 2001. She later was reassigned to a public relations director position and then reassigned again to senior program director at the Levy Center for senior citizens.

In 2005, Ms. Fox hired Ms. Woodard as the Township's banquet supervisor and bartender. The Levy Center hosts programming for seniors, but it also serves as a wedding venue and hosts other events. In 2015, Ms. Woodard took on the additional role of senior recreational director. Ms. Woodard hired her daughters to work with her. Her son-in-law also works for the Township.

In 2018, Gary Marschke began preparing for his campaign to become Township Supervisor in 2021. As part of that preparation, he attended Township meetings and observed the operation of the Levy Center. He became a member of the Levy Center and "interact[ed]" with Ms. Fox and Ms. Woodard in

that capacity.[1] Another person described Marschke's activity as "interview[ing] the employees" of the Levy Center.[2]

Marschke claimed he was struck by Ms. Fox's and Ms. Woodard's lack of qualifications to lead the Levy Center. In his opinion, the Center was "not being managed properly."[3] Marschke observed that Ms. Fox and Ms. Woodard never took responsibility when asked questions about the operation of the Levy Center. Instead, Ms. Fox and Ms. Woodard "would point in opposite directions. They would each blame somebody else."[4]

In 2021, the Township held its local election. Marschke ran for Township Supervisor as a Democrat and had a slate of other candidates running as trustees with him. He had two major opponents running for Township Supervisor. One of them was a write-in candidate, Felix George, who ran as a Republican. Ms. Fox and Ms. Woodard supported George's campaign. They attended at least one of his fundraisers, stuffed envelopes, and passed out flyers. Ms. Woodard also donated to his campaign. Also supporting George's campaign was Linda Youngs. Youngs was, at the time, the assistant to the Township Supervisor. As assistant to the Township Supervisor, Youngs was Ms. Fox's and Ms. Woodard's manager.

Ms. Fox testified in her deposition that, during the campaign, she and Marschke were never at the same political event and that Marschke never saw her put signs out, stuff

---

[1] R.114-2 at 38:20–39:04.

[2] R.105-1 at 148:11–20.

[3] R.114-2 at 40:08.

[4] R.105-1 at 148:17–19.

envelopes, or perform any other supporting role in the campaign. Nor did any of Marschke's fellow candidates. She did not speak with Marschke or any of the trustee-candidates about her involvement in the Republican Party. Ms. Woodard testified similarly. She also said she never spoke to Marschke or any of his trustee-candidates about being a Republican. Ms. Woodard did not even know the identities of the trustee-candidates.

Marschke and his slate won the April 2021 election and took office on May 17, 2021. On May 18, the new Township Board held its first meeting.[5] At this meeting, it voted to reorganize the Township. The most significant changes were made to the leadership of the Levy Center. Instead of having a senior program director (Ms. Fox) and a senior recreational director (Ms. Woodard), the Township would employ a Levy Center Director and a Township Administrator. Both of those new positions would report directly to the Township Supervisor, and each would be solely responsible for designated departments.

Marschke stated in his deposition that Ms. Fox's and Ms. Woodard's names were not discussed at the board meeting with respect to the new positions. Rather, as Trustee Terri Ransom said in her affidavit, the board reviewed an organizational chart that Ransom had prepared on the basis of Marschke's instructions. The chart had no names on it and instead simply contained the names of each position. The Board appointed Jackie Traynere, a Democrat, as the Township Administrator and Linda Youngs as the Levy Center Director.

_____

[5] The Township Board is comprised of the Township Supervisor and the four trustees.

Youngs had supported the Republican candidate's campaign, alongside Ms. Fox and Ms. Woodard.

Ms. Fox and Ms. Woodard initiated this lawsuit in the Circuit Court of the Twelfth Judicial Circuit in Will County, Illinois. They named DuPage Township, Gary Marschke, and Jackie Traynere as defendants. Invoking 42 U.S.C. § 1983, they alleged First Amendment retaliation and procedural due process violations against all defendants; they further alleged state law claims for breach of their implied employment contracts against DuPage Township as well as conspiracy and a violation of the Open Meetings Act.

The defendants removed the case to the Northern District of Illinois. Following the partial grant of a motion to dismiss, the First Amendment retaliation claim against DuPage Township and the breach of implied contracts claim against DuPage Township were the only remaining claims.[6] Following discovery, DuPage Township (the only remaining defendant) moved for summary judgment on the First Amendment claim and the breach of implied contracts claim.

The district court granted summary judgment for DuPage Township. It ruled that Ms. Fox and Ms. Woodard had failed to make a prima facie showing that their protected First Amendment activity was a motivating factor in their terminations. The court explained that, "[s]etting aside the undisputed evidence that the decision to undergo reorganization occurred years before the election, Plaintiffs fail to present any evidence that Marschke or any of his slate knew that

---

[6] The appellants bring no issues with respect to the other claims.

Plaintiffs campaigned against him."[7] In fact, Ms. Fox "testified that to the best of her recollection Marschke never talked to her about her involvement with the Republican party and never saw her attending an opponent's campaign event or otherwise campaigning for an opponent."[8] "Similarly, [Ms.] Woodard testified that she never spoke to Marschke or his trustees about her political affiliation and they never saw her engaging in political activities like attending fundraisers or putting up signs."[9] Their contention that Marschke "*assumed* Plaintiffs were campaigning for Republicans" was "conjecture," insufficient to prevail at summary judgment.[10]

Additionally, continued the court, even if there was evidence that Marschke or his slate knew about the plaintiff's protected activities, they did not and could not "overcome the Township's plausible argument that the duplicative nature of Plaintiffs' roles, not retaliatory animus, motivated its decision to eliminate Plaintiffs' positions."[11] The district court found that the undisputed evidence demonstrated that Marschke was primarily motivated to run for office by "his dissatisfaction with Plaintiffs' handling of the Levy Center."[12] Also, the Township did not terminate any other Republicans' employment. Most notably, Youngs, who also campaigned for the Republican candidate, was not terminated. Instead, she was

---

[7] R.120 at 7.

[8] *Id.* (citing R.105-7 at 238:06–239:21).

[9] *Id.* (citing R.110 at ¶ 43).

[10] *Id.* (emphasis in original).

[11] *Id.* at 8.

[12] *Id.*

hired to fill one of the new positions created by the Board, and was paid the same as her counterpart, Traynere, who had campaigned for Marschke. The district court denied Ms. Fox's and Ms. Woodard's motion to reconsider.

## II

## DISCUSSION

We review the district court's grant of summary judgment de novo, taking all facts in the light most favorable to the plaintiffs.[13] Ms. Fox and Ms. Woodard contend that the district court erred by granting summary judgment on their First Amendment retaliation claim to the Township. They claim the court failed to consider all the evidence of political discrimination and retaliation and failed to view the evidence and draw inferences in their favor.

To succeed on their First Amendment claim, Ms. Fox and Ms. Woodard must make a prima facie case of retaliation. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). They must show that their speech was constitutionally protected; that they suffered a deprivation likely to deter their speech; and that their speech was "at least a motivating factor in the [Township's] actions." *Id.* (citation modified). The Township concedes the first two requirements, so the only issue is whether Ms. Fox's and Ms. Woodard's campaigning for George was "at least a motivating factor" in their terminations. *Id.*

"At summary judgment in First Amendment retaliation cases, the burden of proof for causation is divided and shifts between the parties." *McGreal v. Vill. of Orland Park*, 850 F.3d

---

[13] *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

308, 312 (7th Cir. 2017) (citing *Kidwell*, 679 F.3d at 965). "First, the plaintiff must produce evidence that his speech was at least a motivating factor … [in] … the employer's decision to take retaliatory action against him.'' *Id.* (citation modified). If the plaintiffs make this threshold showing, the burden then shifts to defendants to produce evidence showing that they would have deprived plaintiffs even absent the protected speech. *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025). In other words, the defendants carry the burden to show the protected speech was not the but-for cause of the deprivation. *Id.* If defendants carry the burden of showing other reasons for the deprivation, the plaintiffs must demonstrate that those proffered reasons were pretextual and that retaliatory animus was the actual motivation for the deprivation. *Id.* The district court correctly decided that Ms. Fox and Ms. Woodard cannot satisfy this burden. They point to no direct evidence that their participation in George's campaign was a motivating factor in their terminations. Instead, they rely on an inference of suspicious timing. Suspicious timing can allow a jury to "infer that retaliation occurred." *Kidwell*, 679 F.3d at 965. However, suspicious timing is "rarely" enough to create a triable issue because suspicion "is not enough to get past a motion for summary judgment." *Id.* at 966 (citation modified). Therefore, for a suspicious timing argument to give rise to an inference of causation, Ms. Fox and Ms. Woodard at least "must demonstrate that 'an adverse employment action follow[ed] close on the heels of protected expression, and [they must] show that the person who decided to impose the adverse action knew of the protected conduct.'" *Id.* (quoting *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001)); *see also Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011) (finding that suspicious timing, in combination with a

"threadbare" explanation for the adverse action, were sufficient).

Here, the undisputed evidence demonstrates that Marschke and the trustees did not know about Ms. Fox's and Ms. Woodard's political activities. Although some of the trustees knew who Ms. Fox and Ms. Woodard were in passing, both Ms. Fox and Ms. Woodard testified that neither Marschke nor the trustees saw them participating in the campaign and that they never spoke with Marschke or the trustees about their political affiliations. Additionally, during the board meeting at which Ms. Fox and Ms. Woodard were terminated, their names were not discussed.

Even if Marschke and the trustees were aware of the plaintiffs' political activity, however, the defendants have carried their burden to show alternative explanations for the plaintiffs' terminations. Undisputed evidence demonstrates that Marschke was dissatisfied with the management of the Levy Center and that one of his reasons for running for supervisor was to effect changes in the Center. So, the burden would shift back to plaintiffs, but they cannot show that these reasons were pretextual and that retaliatory animus was the actual motivation for the deprivation. Ms. Fox's and Ms. Woodard's unsupported assertion that the explanation for their terminations was "ever-changing" are not enough to overcome summary judgment. Appellants' Br. 15. Indeed, one of the new positions was filled by Linda Youngs, who also campaigned for George. Further still, Ms. Woodard's daughter Kelli, who also campaigned for George, kept her position. In short, the undisputed circumstantial evidence does not support Ms. Fox's and Ms. Woodard's claim of suspicious timing. But even if it did, the defendants carried their burden and

plaintiffs have not rebutted it. Therefore, summary judgment was proper.

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED